Kenneth E. GILLIS and Gillis Automotive Products, Inc., a Wyoming Corporation, Appellants (Defendants),

v.

F & A ENTERPRISES, a general partnership, Appellee (Plaintiff).

Kenneth E. GILLIS and Gillis Automotive Products, Inc., a Wyoming Corporation, Appellants (Defendants),

v.

K. Jayamara HOLLA and Shirin Bhat Holla, Appellees (Plaintiffs).

Nos. 90–169, 90–170.

Supreme Court of Wyoming.

June 27, 1991.

Philip P. Whynott, Cheyenne, for appellants.

John Hoard, Casper, for appellees F & A Enterprises and Hollas.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY, and GOLDEN, JJ.

CARDINE, Justice.

In these cases we are called upon to answer a number of questions arising out of lawsuits filed against appellants, Kenneth E. Gillis (Gillis) and Gillis Automotive Products, Inc. (GAP), a corporation owned by Gillis. Appellees, K. Jayamara and Shirin Bhat Holla (Hollas) sought judgment against Gillis and GAP for recovery of their investment in GAP. Appellee, F & A Enterprises (F & A), sought judgment against Gillis and GAP for money due and owing. The questions include such matters as piercing the corporate veil, notice of hearing for entry of default, and the existence of genuine issues of material fact precluding the entry of summary judgment. We decline to answer the issues raised because the record, as well as the briefs submitted in the appeal, are in such a state of disarray as to suggest that by responding to these issues we could only do damage to the jurisprudence of this state rather than augment it in some meaningful way.

We reverse and remand for whatever additional new proceedings may be properly brought to the district court's attention.

## ISSUES

In case No. 90–169, Gillis and GAP raise these issues:

"I. The trial court should not have entered summary judgment against the corporation. There existed differences of material fact over the identity of plaintiff and lease payments.

"II. The trial court erred in piercing the corporate veil by finding that appellant corporation was the alter ego of Gillis."

F & A posits only this issue in response:

"Were the district court's findings in the 'Order on Property Ownership' clearly erroneous or contrary to the great weight of evidence?"

In case No. 90–170, Gillis and GAP present this statement of the issues:

"The trial court should have granted the corporation time to obtain a Wyoming attorney.

"Appellant corporation made a Rule 55 appearance and should have been given notice of the default hearing.

"There existed insufficient evidence to allow attorney fees and the award of attorney fees was not reasonable.

"It was error to deny Gillis the right to amend his answer to include affirmative defenses.

"Appellants met their Rule 60(b) burden and should have been given their requested relief.

"The trial court erred in granting a partial summary judgment against Gillis.

"The trial court erred in piercing the corporate veil by finding that appellant corporation was the alter ego of Gillis."

In response to these arguments, the Hollas contend:

"Was the default judgment against Gillis Automotive Products, Inc., properly entered?

"Did the district court abuse its discretion in denying appellants' motions to amend its answer, reconsider the judgment, and set aside the default judgment under Rule 60(b) W.R.C.P.?"

## FACTS AND PROCEEDINGS, 90–169

This litigation was commenced by the filing of a complaint on April 25, 1989. In the complaint, F & A alleged that GAP owed it $13,520.00 on an unpaid account. This sum represented rent due on a lease ($750.00 per month for a period of 16 months), as well as a bad check in the amount of $1,520.00. The lease upon which rental was claimed was by two indi-

viduals. Suit was by F & A—not the lessor-individuals. Service of this complaint was made by leaving it with Gillis as registered agent for GAP.

On May 12, 1989, Gillis, acting pro se, answered the complaint on behalf of GAP and, in addition, filed a counterclaim. On May 23, 1989, F & A filed a motion for default judgment because Gillis, not being licensed to practice law, could not answer for GAP and, therefore, GAP had failed to answer or otherwise plead. On May 24, 1989, Gillis, again proceeding pro se, filed a response to the motion for default judgment, stating that the attorney for GAP was out of town when Gillis filed his answer to the complaint and that the attorney for GAP would "Inter This Case And Will Appear When There Is A Trial Or Hearing Time Setting."

On June 13, 1989, an attorney entered an appearance on behalf of GAP. On that same date, GAP's counsel asked for a continuance of the hearing set to consider the motion for default judgment because he was to be out of town on the date set for that hearing. Counsel for GAP did answer the complaint; and when that answer was filed, no counterclaim was asserted.

By summary judgment entered on September 11, 1989, the district court denied the motion for entry of default, but found there was no genuine issue of material fact and that F & A was entitled to judgment as a matter of law. No appeal was taken by either party from the summary judgment. On September 29, 1989, F & A filed a pleading entitled Verified Motion to Amend Summary Judgment. The principal claim of this pleading was that Gillis was really the "alter ego" of GAP and, therefore, the judgment against GAP should also be entered against Gillis. Gillis responded to this motion in the form of an affidavit generally denying the motion but also stating many other factual allegations.

A hearing was had on January 29, 1990, and because time would not permit completing the proceedings it was continued to, and completed on, May, 1, 1990, to determine the remainder of the issues in this case as well as those in 90–170. A significant part of the record at this hearing consists of a volume of exhibits which includes: stock certificates in GAP (Dennis Valdez, 37 shares, dated May 11, 1987; Lawrence A. Bush, 247 shares, dated May 15, 1987; and the Hollas, 1,235 shares, dated May 18, 1987); annual reports of GAP to the Wyoming Secretary of State for the years 1986–88; and an inventory of equipment, machinery and automobile parts owned by Gillis, which inventory was conducted September 18–23, 1989. Counsel for Gillis represented that the principal reason for the hearing was to demonstrate that the inventory was the property of Gillis and not that of GAP. At the conclusion of opening comments, this colloquy occurred between the district court and counsel for Gillis and GAP:

"THE COURT: Does the attachment that we are concerned about here issue in both cases [90–169 and 90–170]?

"MR. HOARD [Counsel for F & A and Hollas]: Yes.

"THE COURT: Then what are we doing here?

"MR. GOSMAN [Counsel for Gillis and GAP]: Judge, this could be clarified in just a second. We are here to argue about the effectiveness of that attachment against Gillis Automotive Products property that has been levied against. Now we do not contest the ownership question with regard to any levy made by Mr. and Mrs. Holla against Kenneth Gillis individually because it is our position that he owns the equipment, but to the extent that the Hollas have an attachment against Gillis Automotive Products and F & A Enterprises has its attachment against Gillis Automotive Products, Inc., then we are here to argue that, and I believe that F & A Enterprises simply has a judgment against the corporation.

"MR. HOARD: That is correct.

"THE COURT: But F & A—Who has judgment against Mr. Gillis individually?

"MR. HOARD: Mr. and Mrs. Holla.

"THE COURT: Was the attachment executed in favor of them also?

"MR. HOARD: Yes it was Your Honor. They hold a secondary execution. The first execution issued and served was F & A Enterprises. The second one that attached to the property was Holla's execution.

"THE COURT: Well, all right, let's see where we go.

"MR. GOSMAN: The judgment against Kenneth E. Gillis has been stayed, Your Honor, pending their ability to perfect an appeal, but the judgment against Gillis Automotive Products, Inc. held by F & A Enterprises is stayed pending the outcome of this hearing.

"THE COURT: I stayed it for them to effect an appeal?

"MR. GOSMAN: Yes. The judgment by Holla was taken on a partial summary judgment and there are several counts outstanding at this time which have not even been set for trial which prevent the Plaintiff from obtaining a final judgment for purposes of taking an appeal.

"THE COURT: Well, then it was pending final judgment, wasn't it?

"MR. GOSMAN: Well, yes.

"THE COURT: All right."

The main result of the hearing was to determine the ownership of certain property as between Gillis and GAP.

On May 31, 1990, the district court entered an order entitled Order on Property Ownership. The district court found that Gillis had transferred ownership of the subject property to GAP and that GAP was the alter ego of Gillis. *This order also amended F & A's judgment against GAP so as to be effective against Gillis.* It is from this order that Gillis and GAP take their appeal in this case.

## FACTS AND PROCEEDINGS, 90–170

This case was initiated by a complaint filed on May 8, 1989. The Hollas, who are nationals of India, claimed they were induced to come to Casper and invest in GAP which Gillis purported had a minimum of one million dollars in assets. The Hollas invested $25,000.00 in GAP, and Mr. Holla was promised a job as a mechanical engineer. The Hollas alleged fraud in the inducement, as well as violation of state and federal securities statutes. The Hollas sought to recover their $25,000.00 investment, as well as interest, lost income, costs and attorney fees, and punitive damages for outrageous conduct. The defendants named in this action were Gillis and GAP. Summonses were served on both.

On May 26, 1989, Gillis answered the complaint, proceeding pro se, for both himself and for GAP. On September 15, 1989, Hollas filed a motion to strike that portion of Gillis's answer which purported to be on behalf of GAP for the reason that the corporate defendant could not be represented pro se by a nonlawyer, as well as a motion for default judgment against GAP.

The district court granted a partial default judgment against GAP on September 18, 1989. The record does not show that GAP received notice of this hearing. On October 12, 1989, Gillis sought a continuance so as to obtain counsel for GAP. On October 25, 1989, after a hearing before the court (which apparently was not transcribed), a partial summary judgment paralleling that described above was entered against Gillis individually. On November 6, 1989, an attorney entered an appearance on behalf of Gillis and GAP and, on December 8, 1989, filed several pleadings and sought reconsideration of the summary judgment against Gillis. No action was taken on these motions, but they were renewed by a second counsel for Gillis and GAP on May 23, 1990. In response to these motions, the district court stayed the imminent execution sale; denied the motion to reconsider the summary judgment against Gillis; denied a motion to amend the complaint; and directed entry of final judgment pursuant to W.R.C.P. 54(b) so that Gillis could perfect an appeal. Gillis and GAP took an appeal from this order. Also entered in this case was an Order on Property Ownership identical to that entered in 90–169.

## DISCUSSION

We begin by noting that F & A sued to recover rentals due upon a lease to which F

& A was not a party. Summary judgment was awarded F & A against GAP. That judgment's meaning is clouded by the state of the pleadings, the record on appeal in general, and the briefing in this court. The record strongly suggests that any judgments against GAP are meaningless in that it likely has no assets, unless the corporate veil should, indeed, be pierced. A sufficient record was not developed to sustain findings that would allow piercing the corporate veil. The record does not demonstrate that notice of default was given, thus default cannot be sustained. W.R. C.P. 55. It follows, as well, that any award of attorney fees must be reversed. The amendment to the existing judgment to add Gillis as a party responsible for the judgment is, likewise, unsupported by the record and seemingly without precedent. We do not assign any specific fault to the various parties or to either of the district court judges who presided in these cases. Suffice it to say, performance was deficient to such an extent that the record will not support the actions taken.

In short, the record in this case is so deficient and in such a state of confusion that we are unable to perform our duty in passing on the errors raised and in reviewing the judgments appealed from. *See Bellows v. Bellows*, 116 R.I. 171, 353 A.2d 622 (1976); *Bamma Leasing Co., Inc. v. State*, 556 So.2d 149, 150–51 (La.App.1990). Our authority under the W.R.A.P. and Art. 5, § 2 Wyo. Const., permits this result. Moreover, as Chief Justice Blume said in *Chicago & N.W. Ry. Co. v. City of Riverton*, 70 Wyo. 119, 247 P.2d 660, 663 (1952), were we to allow our decisions to be based upon "the arguments advanced by counsel in a case, the law in this jurisdiction would be in a sorry state." *And see Condos v. Trapp*, 717 P.2d 827, 833 (Wyo.1986) (Cardine, J., and Rose, J., dissenting). Here, were we to attempt to resolve the "mess" which these parties have brought to us, we would be offending our commitment to deciding only those issues which are properly and meaningfully brought before this court.

All judgments and orders of the district court are reversed and remanded with directions that any additional proceedings begin anew.